■ TRAVELERS INDEMNITY COMPANY et al., Respondents, v LLJV DEVELOPMENT CORP. et al., Appellants. [643 NYS2d 520] —Order of the Supreme Court, New York County (Walter Schackman, J.), entered on or about March 31, 1994 which, (1) denied defendant LLJV Development Corp.'s cross motion for leave to amend its answer to include a Statute of Limitations defense and for partial summary judgment dismissing, as untimely, plaintiffs' cause of action for failure to purchase insurance and (2) granted plaintiffs' motion for an order directing defendant LLJV and its insurance carrier, defendant Continental Casualty Co., to indemnify it for $1.2 million, plus costs and expenses, paid in settlement of a claim brought by its employee, to the extent of directing trial as to the reasonableness of said settlement, unanimously affirmed, with costs.

Pursuant to an agreement dated October 15, 1983, plaintiff Tishman Construction Corp. undertook the management of a building project at 85 Wall Street for defendant LLJV Development Corp., the general contractor. The written agreement provides, "All services to be performed by Construction Manager hereunder * * * shall be performed as agent of Contractor." The contract further provides that LLJV will obtain bodily injury and property damage coverage for the project. The insurance specifications require the policy to name Tishman's employees as additional insureds ("Personal Injury with employees exclusion voided"). Finally, the contract provides that LLJV will indemnify and hold Tishman harmless against all claims arising out of the services Tishman is to render, except those arising out of Tishman's "sole negligence, fraud or bad faith or other misconduct."

In accordance with its obligation, LLJV purchased an insurance policy from defendant Continental Casualty Co., a CNA Insurance Company. An endorsement names Tishman, its affiliates, servants and employees, as additional insureds. Another endorsement states: "The company shall not exercise any right of contribution, indemnity or subrogation against * * * [a]ny person or organization entitled to coverage under this policy".

On March 20, 1986, a propane tank exploded at the construction site injuring two of Tishman's employees, John O'Connor and Sandy Townsend, who instituted separate legal actions, Townsend naming as parties defendant the owner, 85 Wall Street Limited Partnership, and other entities involved in the project, and O'Connor naming as defendant only the lessee of the premises, Barclays Bank, PLC. In the course of both lawsuits, Tishman was ultimately impleaded as a third-party defendant by 85 Wall Street Limited Partnership.

While there is disagreement regarding the affiliation between 85 Wall Street and LLJV, both are named insureds under the Continental Casualty Co. policy. Furthermore, the construction management agreement between LLJV and Tishman recites that LLJV "and Barclays Bank International Ltd. * * * have entered into a certain Development Agreement * * * dated of even date herewith", which is incorporated by reference, to construct an office building on the site. It discloses that LLJV, the contractor, "has assigned to Owner [85 Wall Street Limited Partnership] all of Contractor's right, title and interest under the Development Agreement and, in connection with such assignment, Contractor has agreed to perform or cause to be performed all of Owner's (formerly Contractor's) development-related obligations under the Development Agreement".

The precise relationship between LLJV and 85 Wall Street is not otherwise revealed by the record. While the subrogation claim was asserted in the form of a third-party action by 85 Wall Street, that entity is not a party to this appeal. Neither is it listed by Continental, in its pre-argument statement, as a party to the action, lending support to Tishman's contention that these entities "have been referred to interchangeably throughout this litigation." Furthermore, it is evident from the subject construction management agreement that 85 Wall Street and LLJV are united in interest in erecting the improvement upon the owner's site. LLJV, as general contractor and signatory to the development agreement with Barclays Bank International Ltd., has undertaken the owner's "development-

related obligations". Meanwhile, 85 Wall Street Limited Partnership, the owner of the site, has taken assignment of LLJV's interest in the development agreement and delegated its duty to develop the site to LLJV. It is therefore difficult to discern more than convenience as a basis for the respective roles assumed by these two entities in this project (see, *Rachmani Corp. v 9 E. 96th St. Apt. Corp.,* 211 AD2d 262, 264-265, 270-271). Whatever legal significance may attach to any distinction between the owner and the general contractor, this Court agrees with the conclusion reached by Supreme Court in each of the underlying actions that the real party in interest in this matter is defendant insurer.

Continental attempted to tender defense of the *O'Connor* action to Tishman's own insurance company, but ultimately defended Tishman in that litigation. It refused to provide Tishman with counsel in the underlying *Townsend* action, and The Travelers Indemnity Co., Tishman's workers' compensation and employer's liability carrier, provided the defense, eventually settling this matter for some $1.2 million. The instant action seeks to recover that amount from defendant LLJV on the ground that it breached its contractual obligation by "failing to procure viable and effective insurance protecting TISHMAN" against the underlying claim for personal injury brought by Townsend. Recovery from Continental is sought on the ground that Tishman is insured against liability under its policy. Tishman contends that Continental's commencement of the third-party action against it, as subrogee of 85 Wall Street Limited Partnership, is a breach of the waiver of subrogation agreement contained in the policy and otherwise contrary to law.

The moving papers submitted by defendant LLJV advance the position that this action was untimely commenced. It is submitted that LLJV should be permitted to amend its answer to assert the defense of the Statute of Limitations and, further, that it is entitled to summary judgment dismissing the complaint against it on that basis. It is argued, disingenuously, that if LLJV breached the construction management agreement with Tishman in failing to provide adequate insurance coverage, the breach occurred, at the latest, "on March 20, 1986, the date of the accident which gave rise to claims against Tishman." Therefore, it is contended, service of the summons and complaint dated October 20, 1992 was made "more than six and a half years after the contract was breached." What this argument blithely ignores, of course, is that Townsend, as Tishman's employee, had no cause of action against it and, indeed, the summons and complaint served by Townsend does not name Tishman as a party defendant.

In its appellate brief, LLJV asserts that its breach of the agreement with Tishman occurred at the time Tishman began rendering management services in April 1985. However, the theory of breach of contract based upon the asserted right of plaintiff Tishman to seek nominal damages upon commencement of its performance under the agreement was not articulated before Supreme Court until its reply brief. This contention is not cognizable for the first time on appeal (*Scherrer v Time Equities*, 218 AD2d 116; *Lumbermens Mut. Cas. Co. v Morse Shoe Co.*, 218 AD2d 624, 626), particularly in the absence of any Statute of Limitations defense asserted in the pleadings (CPLR 3211 [a] [5]; [e]; *Dunning v Dunning*, 300 NY 341, 343; *see also, Kolmer-Marcus, Inc. v Winer*, 32 AD2d 763, 764, *affd* 26 NY2d 795). Clearly, the propriety of Supreme Court's denial of leave to amend the answer must be reviewed in light of the arguments presented on the motion, not on the basis of some novel proposition (*Recovery Consultants v Shih-Hsieh*, 141 AD2d 272, 276, citing *Huston v County of Chenango*, 253 App Div 56, 60-61, *affd* 278 NY 646). Moreover, the subject agreement provides that LLJV will hold Tishman harmless and indemnify it from all claims and damages except those arising out of its "sole negligence, fraud or bad faith or other misconduct", and it is well settled that a cause of action based upon a contract of indemnification does not arise until liability is incurred by way of actual payment (*Bay Ridge Air Rights v State of New York*, 44 NY2d 49, 54, citing *Musco v Conte*, 22 AD2d 121, 125-126; *Bunker v Bunker*, 80 AD2d 817; Siegel, NY Prac § 162, at 242 [2d ed]).

Defendants further maintain that they are not obligated to indemnify Tishman because the injuries were the result of Tishman's sole negligence. Defendants reason that the injuries sustained were the direct consequence of the negligence of Tishman's employees in placing a heater too close to the propane cylinder, resulting in the explosion. This argument is specious in that it fails to differentiate between the underlying negligence action and LLJV's breach of contract, which is the subject of this action (*see*, Siegel, NY Prac § 162, at 241 [2d ed], citing *Musco v Conte, supra*). The particular "cost * * * arising out of the Services" performed by Tishman for which indemnification is sought is not the claim arising out of the accident, per se, it is the lack or inadequacy of insurance that, irrespective of fault, should have covered the loss resulting from the claim successfully prosecuted by Sandy Townsend, Tishman's employee.

The construction management agreement containing the

indemnity provision is included in the record on appeal and is subject to interpretation as a matter of law (*Rentways, Inc. v O'Neill Milk & Cream Co.*, 308 NY 342, 349). A fair construction of the instrument is that LLJV agreed, (1) to provide insurance coverage for Tishman against liability for bodily injury sustained by its employees and (2) to indemnify and hold Tishman harmless against any claim arising out of Tishman's performance of its duties under the agreement. Under the circumstances, the basis of the loss incurred by Tishman is LLJV's breach of contract in failing to secure adequate insurance protection. The "sole negligence" exception, contained in the indemnification provision, is inapposite where the basis for the loss is directly attributable to breach of contract and only indirectly a consequence of the asserted negligence of Tishman's employees.

Defendant insurer, Continental, and its parent company appeal from the order of Supreme Court to the extent that it granted plaintiffs partial summary judgment. The decision and order (one paper) states, *inter alia*, that the third-party action asserted on behalf of 85 Wall Street constitutes an impermissible attempt by defendant insurance company to obtain subrogation from Tishman, another of its insureds, in violation of *Pennsylvania Gen. Ins. Co. v Austin Powder Co.* (68 NY2d 465) and *North Star Reins. Co. v Continental Ins. Co.* (82 NY2d 281).

While Continental makes much of the question of collateral estoppel in its brief, Supreme Court did not reach the issue of whether the holding in the related action, captioned *O'Connor v 85 Wall St.* (Sup Ct, NY County, Mar. 1, 1993, Nardelli, J., index No. 22596/86), has any preclusive effect on this litigation. In *O'Connor*, defendant 85 Wall Street asserted virtually identical grounds for recovery against Tishman. In *O'Connor*, the third-party action was deemed to have been interposed "on behalf of the insurer, the real party in interest" and was held to violate the public policy which bars an insurer from asserting a claim for subrogation against its own insured.

In ruling the third-party complaint impermissible in the instant action, Supreme Court adopted the reasoning in *O'Connor*, ruling that the law prevents an insurer from seeking " 'subrogation against its own insured for a claim arising from the very risk for which the insured was covered' " (quoting *North Star Reins. Corp. v Continental Ins. Co., supra*, at 294; and citing *Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra*, at 470-471; *Michalak v Consolidated Edison Co.*, 166 AD2d 213, 214-215, *appeal dismissed* 77 NY2d 989). Continental

argues, quite correctly, that case law in this area has undergone considerable revision and that *Michalak* (*supra*), in particular, is no longer controlling authority. It nevertheless remains to be determined whether present case law sanctions Continental's attempt to pursue subrogation against its own insured or even whether evolving precedent has a material impact on the rights of the parties under the subject construction management agreement.

The issues raised in this matter are not novel. Within days of the decision rendered by Justice Nardelli in the *O'Connor* action, this Court issued its ruling in *Prince v City of New York* (189 AD2d 33 [Mar. 9, 1993], *affd* 82 NY2d 281), which is dispositive of the subrogation issue raised on this appeal. At the time *Prince* was decided, the controlling precedent in this Department was *Michalak v Consolidated Edison Co.* (166 AD2d 213, *supra*). *Michalak* holds that, by requiring a contractor to provide insurance in its favor, an owner thereby waives its right to seek common-law indemnification against the contractor. The problem confronting the Court in *Prince* was to reconcile the outcome in that case with more recent decisions in *Valentin v City of New York* (187 AD2d 343) and *North Star Reins. Corp. v Continental Ins. Co.* (185 AD2d 187) without contravening the ruling in *Michalak* (*supra*) and, thus, offending the principle of stare decisis. In *Valentin* (*supra*, at 344), a case arising out of the death of a contractor's employee, we applied *Michalak* to preclude a third-party claim for indemnification and contribution against the contractor, which had procured insurance in favor of the City, up to the limits of the policy, applying the so-called "preindemnification" rule. In *North Star* (*supra*, at 188), however, we held that the exclusion of the underlying injury from coverage rendered a third-party action for subrogation viable, thus departing from a strict application of the preindemnification rule that, by requiring the contractor to provide it with insurance, the owner has waived any right to seek indemnification until the limits of its insurance policy have been exhausted.

In *Prince* (*supra*), a case which also involved the CNA Insurance Companies, this Court applied the rationale of *Pennsylvania Gen. Ins. Co. v Austin Powder Co.* (68 NY2d 465, *supra*) to preclude CNA, which provided separate policies of insurance protecting both the City and the general contractor, from asserting a claim for indemnification against the contractor that purchased the policies. That leading Court of Appeals case (*supra*, at 471) holds that "an insurer may not be subrogated to a claim against its own insured, at least when the claim arises

from an incident for which the insurer's policy covers that insured". In *Prince*, as here, the indemnification claim constitutes an attempt by CNA to recover from its own insured for a loss against which its policy protects that insured (*supra*, at 36, citing *Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra*, at 470-471). Similarly, the effect of advancing the indemnification claim is that "its own interests are at considerable variance to those of its other insured" and therefore "involve[s] CNA in an obvious conflict of interest given its obligation to defend [one insured] on the same claim it asserts on behalf of [the other insured]" (*supra*, at 37). The motivation for the subrogation claim is to shift the burden of the loss from the subrogee onto another insurer (*supra*, at 36). Finally, though not in issue here, *Prince* held that the issuance of a separate policy to each of CNA's insureds does not affect the outcome, being merely the elevation of form over substance (*supra*, at 37).

In affirming, the Court of Appeals likewise applied the rule that the carrier "has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered" (*North Star Reins. Corp. v Continental Ins. Co., supra*, at 294, citing *Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra,* at 468; 16 Couch, Insurance 2d § 61:136 [rev ed]). It emphasized the need "to guard against the potential for conflict of interest that may affect the insurer's incentive to provide a vigorous defense for its insured" (*supra*, at 295) and to avoid the potential for abuse that may result from the ability of the insurer to "fashion the litigation" to shift the loss to other insurers (*supra*, at 296). Finally, it agreed that the provision of insurance coverage under separate policies is "immaterially different" and subject to the same policy considerations with respect to conflict of interest by the insurer (*supra*, at 295).

In dispensing with the preindemnification approach espoused in *Michalak v Consolidated Edison Co.* (*supra*), the Court of Appeals has adopted a narrower rule designed to reflect the expectations of the parties, as reflected in agreements which expressly reserve the right to pursue indemnification, and of the insurers, as reflected in the premiums charged to cover the risk posed by the activities of the respective parties (*North Star Reins. Corp. v Continental Ins. Co., supra*, at 292). While it may invite litigation concerning the scope of coverage afforded to the asserted culpable party by the carrier's insurance policy, as this case so aptly illustrates, it affords greater flexibility to the parties to fashion a suitable agreement allocating loss.

Most notably, in the context of the matter before us, it does not prevent the parties from providing that those covered by insurance shall waive the right to seek indemnification and, thus, provide for preindemnification by contract.

This is precisely the course taken by the parties to the construction management agreement under review. The agreement provides that LLJV will hold Tishman, its agent, harmless against all claims arising out of Tishman's services on LLJV's behalf. To that end, the policy of insurance required to be furnished by LLJV contains a provision waiving the insurer's right to seek contribution, indemnity or subrogation from its insureds. However, neither the plain language of these instruments nor the clear policy of the courts, as reflected in *North Star Reins. Corp. v Continental Ins. Co. (supra)*, seem to have deterred defendant Continental in its quest for reimbursement from Tishman, its own insured.

Continental raises some long, circuitous and ultimately unavailing arguments why the injury to Sandy Townsend does not come within the protection afforded by the insurance policy it issued to LLJV. It first takes issue with the factual determination of Supreme Court (CPLR 3212 [g]; Siegel, NY Prac § 286, at 415-416 [2d ed]) supporting its conclusion that the injury to Townsend is covered by the policy: "Based upon my examination of the record, including the facts herein, i.e., that Sandy Townsend was an employee of Tishman on the construction site performing work for LLJV or 85 Wall when the explosion occurred, it is clear that the occurrence was covered by the insurance policy." In arguing that the accident is exempted from the coverage afforded by its policy, Continental tortures the language of its additional insureds endorsement to find a basis for exclusion, contending that the record is devoid of proof that the work performed by Townsend comes within the protection provided to Tishman and its employees, additional insureds under its policy. The endorsement restricts coverage to "operations performed for such insured by or on behalf of the named insured". Therefore, Continental maintains, the work must have been " 'performed for [Tishman]' by either 85 Wall or LLJV" in order to be covered under its policy.

This interpretation studiously avoids the obvious construction that the operations being carried out by Townsend were performed for Tishman *on behalf of* LLJV, a named insured, for which Tishman was present on-site as agent pursuant to the terms of the construction management agreement. It also ignores the burden of proof on this issue. As we recently noted, "An insurer has the burden of establishing that any exclusion

is 'unambiguously applicable to the pleaded allegations' " (*New Hampshire Ins. Co. v Jefferson Ins. Co.*, 213 AD2d 325, 327, quoting *Duncan Petroleum v Aetna Ins. Co.*, 96 AD2d 942, 943, *affd* 61 NY2d 665). Continental has offered no facts to establish that Townsend's activities at the time of the accident come within the asserted exemption from coverage. Nor does it offer any ground which might justify this Court in striking Supreme Court's factual determination.

Continental further contends that the proscription against subrogation is inapplicable because its policy excludes "bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or any obligation of the insured to indemnify another because of damages arising out of such injury". However, it further provides that "this exclusion does not apply to liability assumed by the insured under an incidental contract." The contractual liability coverage section of the policy provides: "(A) The definition of incidental contract is extended to include any oral or written contract or agreement relating to the conduct of the insured's business." Even ignoring Townsend's own status as an additional insured, the liability subject to the policy is LLJV's failure to indemnify and hold Tishman harmless under the terms of the construction management agreement, and this assumed liability is outside the exclusion for bodily injury relied upon by Continental.

Finally, Continental argues that the antisubrogation rule set forth in *North Star Reins. Corp. v Continental Ins. Co. (supra)* "is inapplicable to actions between insurers." Without belaboring the shortcomings of this argument, it is evident that the application of such a blanket exception to the circumstances of this case, which implicates the sound policy considerations prompting enunciation of the rule, would hardly advance "the public interest in assuring integrity of insurers' relations with their insureds and in averting even the potential for conflict of interest" (*Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, supra, at 472; see also, *Washington v New York City Indus. Dev. Agency*, 215 AD2d 297, 299 [denomination of action as one for declaratory judgment does not avoid antisubrogation prohibition]).

Motion and cross-motion insofar as reargument is sought granted solely to the extent of clarifying the unpublished memorandum decision entered on December 5, 1995 (Appeal No. 55902) by recalling and vacating said memorandum decision and substituting a new memorandum decision therefor. That portion of the motion and cross-motion seeking leave to appeal

to the Court of Appeals denied. Concur—Rosenberger, J. P., Rubin, Ross, Asch and Mazzarelli, JJ.